## TEXAS EMPLOYERS' INS. ASS'N v. SMITH.

### No. 11834.

Court of Civil Appeals of Texas. Dallas.
Sept. 29, 1934.

Rehearing Denied Nov. 3, 1934.

Jas. P. Swift, of Dallas, for appellant.

White & Yarborough, of Dallas, for appellee.

BOND, Justice.

Appellee filed this suit under the provisions of the Workmen's Compensation Act (article 8306 et seq., R. S. 1925, as amended), to set aside an award of the Industrial Accident Board, and to recover of appellant, the insurance carrier, compensation for injuries resulting in the death of her husband, Grant C. Smith, sustained in the course of his employment with Ed C. Smith & Brother Undertaking Company, a subscriber to the Employers' Liability Act of the state of Texas.

The main question in this case is, whether or not Grant C. Smith sustained injuries in the "course of his employment," and such as having to do with, and originating in the work, business, trade, or profession of his employer, received by him while engaged in or about the furtherance of the affairs of business of his employer.

The undisputed facts, as disclosed by the record, bearing upon the question involved, show that the deceased was an employee of the Ed C. Smith & Brother Undertaking Company, and, on the occasion of the fatal injuries, he was on his evening meal hour, returning from his home to the place of his employment, and that his injuries arose out of an automobile collision occurring at the intersection of two public streets in the city of Dallas, Tex., several blocks removed from the premises of the employer, in which his personally owned and operated automobile (over which his employer had no right in or control over) was involved in a collision with an automobile owned and operated by a stranger to this suit.

The deceased's employment embraced different kinds of work, including embalming, making arrangements with representatives of deceased persons for funerals, and conducting funerals generally. In this work, he used, exclusively, his employer's automobile. His working hours were from 8 o'clock a. m. to 10 o'clock p. m., with an intermission of an hour for his noon and evening meals, which time he was privileged to utilize to his own personal use as he saw fit, subject only to be called by telephone, when needed. His employment compelled him to be in reach of a telephone during work hours, and to leave with his employer information of his whereabouts, when he was at his meals elsewhere than his home. He was not permitted to take meals away from his home, without leaving directions at his employer's office where he could be reached, when wanted.

On the occasion of his injuries, Grant C. Smith reached his home about 6:30 p. m., ate his evening meal hurriedly, and left hurriedly, stating, to his family, that he was going back to work, the collision occurring about 7 o'clock on his return, at a street intersection in direct line from the deceased's home and the place of his employment.

The act under consideration (Rev. St. 1925, art. 8309, § 1) provides that the term "injury sustained in the course of employ-

ment" "shall include all other injuries of every kind and character having to do with and originating in the work, business, trade or profession of the employer received by an employee while engaged in or about the furtherance of the affairs or business of his employer whether upon the employer's premises or elsewhere." Injuries received by an employee, after he has left the premises or zone of his employer, and in pursuit of his own purposes, whether upon a highway or elsewhere, are held to be without the course of employment, as that term is used in the statute. . American Indemnity Co. v. Dinkins (Tex. Civ. App.) 211 S. W. 949, 954; London Guaranty & Accident Co. v. Smith (Tex. Civ. App.) 290 S. W. 774, 775. The general rule is thus stated, that compensation is refused to employees for injuries sustained on the way to or from work, under the acts providing compensation for injuries received in the course of employment. The Corpus Juris Treatise on Workmen's Compensation Acts, at page 84, § 75d, says:

"As a general rule accidents which happen to an employee on his way to and from work are not regarded as in the course of his employment, except while he is at or so near the place of employment as reasonably to be regarded as in effect at the place, or where, if not on the employer's premises, he is at or near the place of work and on a road or other way intended by the contract of employment as being the means of access to the work."

This text is by our Supreme Court, in Lumbermen's Reciprocal Ass'n v. Behnken, 112 Tex. 103, 246 S. W. 72, 75, 28 A. L. R. 1402, approved as applicable to our compensation statute.

In the case of American Indemnity Co. v. Dinkins, supra, Dinkins received his injuries in a collision with an automobile; he was returning from work; the automobile was driven by a coemployee, returning to work. The collision occurred on one of the public streets of Beaumont, three-fourths of a mile from the employer's plant. In that case, the Beaumont Court of Civil Appeals held: "It is our opinion it was not the intention of the Texas lawmaking body to include an injury such as the one under consideration. There was no relation of master and servant at the time. There was no duty on the part of any one to see that Dinkins reached his home in safety. If a person should be regarded as performing a service for his master, when he goes home to rest, then why should he not be regarded as furthering his employer's business while he is eating his food; and on this theory, should he be injured, why should he

not be able to recover?" A recovery was thus denied by the Court of Appeals, and a writ of error refused by our Supreme Court.

In the case of London Guaranty & Accident Co. v. Smith, supra, the employee left her place of employment, in response to instructions from her employer to go and get her evening meal and to return in about thirty minutes, to do work in the course of her employment as a saleslady. On reaching her boarding house, she was injured as she started to cross the street, by being struck by a passing automobile. The place where she was injured was a public street, several blocks away from the premises of her employer. The Waco Court of Civil Appeals said: "To come within the meaning of the term 'injury received in the course of the employment,' it must be shown that the injury originated in the work, and, further, that it was received by the employee while engaged in or about the furtherance of the affairs of her employer." A recovery was also denied in this case by the Court of Appeals, and writ of error refused.

Our Supreme Court, in refusing the writs of error in both the Dinkins and Smith Cases, supra, approved the conclusions there reached that the injuries to the employees were not sustained in the course of their employment, and, in the Lumberman's Reciprocal Ass'n v. Behnken, supra, the Supreme Court again pronounced its approval of the Dinkins Case, stating that "this court, by refusing the writ of error, approved the conclusion that the injury to Dinkins was not sustained in the course of his employment. * * * Dinkins' right to use the street was not derived from his employment. The injury occurred at a place provided by the city for public use, and not at a place furnished by Dinkins' employer, as a special mode of access to his work. The danger to Dinkins was one to which each member of the public was alike exposed. He was himself as much exposed to the danger when traversing the street on purely private business as when hurt. Dinkins' injury did not result from risk or hazard incident to the conduct of his employer's business. His injury did not arise out of the business. That conclusion accords with the weight of authority, American and British, as do our conclusions herein. Corpus Juris Treatise on Workmen's Compensation Acts, p. 78, § 68e; Starr Piano Co. v. Industrial Accident Commission, 181 Cal. 433, 184 P. 860; Sundine's Case, 218 Mass. 1, 105 N. E. 435, L. R. A. 1916A, 318; Fumiciello's Case, 219 Mass. 488, 107 N. E. 349; Edwards v. Wingham, 3 K. B. (Eng.) 596, 109 L. T. (N. S.) 50, 6 B. W. C. A. 511; Amys v. Barton (1912) 1 K. B. (Eng.) 41."

■ So, in the instant case, we are of the opinion that Grant C. Smith was not engaged in or about the furtherance of the affairs or business of his employer at the time of his fatal injury. If it be conceded that the accident originated in his work, or incident to his employment, because of the fact that he was going from his home to the place of his employment, he was doing nothing at the time in furtherance of his employer's business. He was returning from a mission of his own. It is true his employment required him to respond to telephone calls of his employer at the meal hours, and return to the place of his employment when called, but there is nothing shown in the record that at the time of his injuries he was doing anything more than returning to the place of his employment. He had not been called, and his employment required him to return to his place of employment to continue his duties until 10 o'clock, so, if he had been called, he did nothing he would not have done in the absence of a telephone call. The deceased was out on a mission of his own, going to and from the place of his employment, by means over which his employer had no control, exposing himself to such hazards and dangers incident to the general public, and at a time when the relationship of master and servant did not exist. Under the authorities, supra, portraying analogous situations, we think appellee failed to show a right of recovery, the fatal injury originating without the course of his employment, as that term is used in the statute.

The judgment of the court below is reversed and judgment here rendered for appellant. .

Reversed and rendered.

LOONEY, Justice.

I dissent from the view of the majority, in holding that Grant C. Smith, deceased, was not injured in the course of his employment within the meaning of the compensation law, because to so hold, in my opinion, is to give the statute, not a liberal but a strict construction.

After correctly defining the term "injury sustained in the course of employment," the court submitted the following special issue: "Do you find from a preponderance of the evidence that such injuries, if any, sustained by Grant C. Smith on or about December 14, 1931, were received by him in the course of his employment with Ed C. Smith & Brother Undertaking Company?" to which the jury answered, "Yes." Whether or not an employee sustains an injury in the course of employment is ordinarily a question of fact, and

not of law. Parker v. Royal Indemnity Co. (Tex. Civ. App.) 59 S.W.(2d) 243; Mosley v. Royal Indemnity Co. (C. C. A.) 68 F.(2d) 220. In my opinion, the uncontradicted evidence on this issue warranted an instructed verdict in favor of Mrs. Smith; but even if it be correctly said that the inferences and implications from undisputed facts and circumstances made an issue, the same was found in her favor, hence the court below did not err in rendering judgment in her favor.

I believe, if need be, the case at bar is distinguishable from cases where the employee is injured, before beginning his day's work, while en route to his employer's business, and also those where the employee is injured after finishing the day's work while en route to his home, illustrated by the case of American Indemnity Co. v. Dinkins (Tex. Civ. App.) 211 S. W. 949, as Mr. Smith was injured, neither before the beginning, nor after the end, but in the midst of a day's work, hence, the doctrine quoted in the majority opinion, from Corpus Juris on Workmen's Compensation Act, page 84, § 75d, also by the Supreme Court in Lumberman's Recip. Ass'n v. Behnken, 112 Tex. 103, 246 S. W. 72, 74, 28 A. L. R. 1402, to the effect, "As a general rule accidents which happen to an employee on his way to and from work are not regarded as in the course of his employment," etc., is not applicable to the facts of the instant case.

The language quoted from Corpus Juris is evidently the rationale of decisions of other jurisdictions, and is of no real value in construing our statute on the subject. In view of the 1917 amendment (Laws 1917, p. 292), defining the term "injury sustained in the course of employment," I do not think conclusive significance should be given either to the time, place, or circumstance of an injury. After excepting injuries caused by an act of God, an act of a third person, those received while in a state of intoxication, and those caused by the employee's willful intention, the amended statute reads, "but shall include all other injuries of every kind and character having to do with and originating in the work, business, trade or profession of the employer received by an employee while engaged in or about the furtherance of the affairs or business of his employer whether upon the employer's premises or elsewhere" (article 8309, second subd. 4, R. S.). Therefore, if the injury had to do with and originated in the work, business, trade, or profession of the employer, and was received while the employee was engaged about the furtherance of said affairs or business, whether upon the em-

ployer's premises or elsewhere, certainly it should not be considered a matter of conclusive significance, where, when, or how the injury was received, because, to be compensable, the statute does not require that the injury be received, either under the eye, immediate control, or even upon the premises of the employer.

The record discloses that deceased had been in the services of the Ed C. Smith & Brother Undertaking Company for over thirty years; his duties embraced different work, including embalming, making funeral arrangements with representatives of the deceased, conducting funerals, etc. On the day of the fatal injury, he was required to be on duty from 8 a. m. to 10 p. m., and, by the terms of his employment, was allowed an hour off for the noon meal and an hour for the evening meal but, at all times, was required to respond to ad interim calls, and often, as disclosed by the record, his meals were interrupted by such emergency calls to duty. On the evening in question, he went home for the evening meal, which he hurriedly consumed, and, as duty required, was returning in his automobile over a direct route to the premises of the employer when run into by an automobile driven by a stranger at a public street intersection of the city of Dallas, receiving the injury that caused his death.

Deceased did not, in my opinion, depart from the orbit of service, or break its continuity by going home for the evening meal; the relation of master and servant continued, and his accidental death was from a hazard incident to the conditions under which he was compelled to labor. The arrangement, allowing deceased an hour off for the evening meal, but requiring that he should be amenable at all times to ad interim calls, aside from the consideration of supplying his need for food, certainly had to do with and facilitated the business of the employer, and had its origin, alone, in these considerations.

While it is true, the right of Mr. Smith to travel over the public streets of the city was not derived from his employment, yet the fact that he received the injury on a public street, due to an automobile collision, a hazard incident to such mode of travel, should not, in my opinion, defeat the claim of his beneficiary, in that, he was required, by the conditions and obligation of his employment, to be where he was and doing what he was doing when killed, just as if engaged in the discharge of duty on the premises of the employer. The danger incident to the use of the streets by him was not of the same quality as that in-

curred by a member of the general public traveling in a similar manner in pursuit of his own business; while the hazard is the same in each instance, the employee is subjected to the danger, by compulsion of duty, whereas a member of the general public is under no such compulsion, but is controlled alone by his own volition.

The compensation law was framed to apply to various employers of labor, to various and constantly varying exigencies and conditions of employments, as well as to the conditions under which the employee is compelled to labor and live. Courts judicially know that, as a rule, employees do not reside or take meals upon the premises of the employer, hence are compelled to go to their homes or elsewhere for meals; this condition of necessity subjects the employee to the hazard of being injured by outside agencies which, in my opinion, is necessarily an incident to such employment. Zabriskie v. Erie Ry. Co., 86 N. J. Law, 266, 92 A. 385, L. R. A. 1916A, 317.

The decisions on this phase of the compensation law are too numerous to admit of comment, and are seemingly in irreconcilable conflict, but this is not to be marveled at, in view of the dissimilar industries, businesses, and the different conditions under which employees are compelled to labor. Speaking of the confusion that prevails, 28 R. C. L., p. 796, § 88, has this to say: " * * * But the expression which has received the greatest amount of consideration is found in the phrase 'arising out of and in the course of the employment'. Practically every court has offered an explanation for these words, but without success. The precedents of other courts are treated with suspicion, and later cases repudiate the labored explanations of the earlier ones, with the result that the whole subject has been greatly confused. Indeed, the opinions under the statute have, if such a thing were possible, intensified the common law maze of apparently conflicting and often unintelligible statements, observations, and reasonings, which thoughtful judges deplore. * * * "

However, the courts of this state have been greatly aided by the very elaborate definition given by statute, of the phrase, an "injury sustained in the course of employment," within the meaning of the compensation law. The evident concept of the definition is, such an injury as should have been foreseen as a result of the particular employment, in view of all the pertinent facts and circumstances, including the nature and conditions of the employment. The authority cited above, con-

tinuing the discussion, says: "And improvement may not be expected until the courts more generally recognize the true basis of their own decisions. Looking behind the dicta of the judges and publicists, one will perceive that responsibility before the law is rested on certain fundamental elements, which, if borne in mind, will dispel the confusion of previous decisions and furnish a simple test for future determinations. These fundamentals, as applied to the class of cases under consideration, are that the injury to the employee shall have been foreseen as a result of his engaging in the employment. * * *"

So, the question is reduced to this, Was the injury to Mr. Smith such as should have been foreseen, as a probable result of his employment, under the conditions he was required to labor? If the remedial statute involved is given the liberal construction it should have, I do not think it difficult to answer the question in the affirmative. Deceased could not live without food, conditions of the employment compelled him to go home for meals; and, as duty required, was returning to the premises of his employer when killed, in an automobile collision, a hazard of the traffic. I respectfully submit that the injury thus received, under the facts and circumstances, should have been foreseen as a probable result of such employment.

While our decisions, and those of other states, are seemingly in conflict on this phase of the law, I submit that, on careful examination, the reasoning of the courts, and the authorities cited in the best considered cases will be found to fully sustain my idea as to the proper application of the law to the facts of the case at bar. See Kirby L. Co. v. Scurlock, 112 Tex. 115, 246 S. W. 76; Vivier v. Lumbermen's Indemnity Exch. (Tex. Com. App.) 250 S. W. 417; Jones v. Casualty Reciprocal Exch. (Tex. Civ. App.) 250 S. W. 1073 (writ refused); Consolidated Underwriters v. Breedlove, 114 Tex. 172, 265 S. W. 128; Standard, etc., Co. v. Stanaland (Tex. Civ. App.) 285 S. W. 878 (writ refused); United States, etc., Co. v. Hardie (Tex. Com. App.) 299 S. W. 871; Fidelity, etc., Co. v. Hammock (Tex. Civ. App.) 5 S.W.(2d) 812; Petroleum Cas. Co. v. Green (Tex. Civ. App.) 11 S.W.(2d) 388 (writ refused); Watts v. Continental Cas. Co. (Tex. Com. App.) 18 S.W.(2d) 591; Federal Surety Co. v. Ragle (Tex. Civ. App.) 25 S.W.(2d) 898 [affirmed (Tex. Com. App.) 40 S. W.(2d) 63]; Texas Emp., etc., v. Herron (Tex. Civ. App.) 29 S.W.(2d) 524; Maryland Cas. Co. v. Smith (Tex. Civ. App.) 40 S.W.(2d) 913; Southern Surety Co. v. Shook (Tex. Civ. App.) 44 S.W.(2d) 425 (writ refused); Commercial Cas. Ins. Co. v. Strawn (Tex. Civ. App.) 44 S.W.(2d) 805 (writ refused); Texas Emp. Ins. Ass'n v. Wright (Tex. Civ. App.) 56 S.W.(2d) 926 (writ granted); Parker v. Royal Indemnity Co. (Tex. Civ. App.) 59 S.W.(2d) 243; Maryland Cas. Co. v. Levine (C. C. A.) 67 F.(2d) 816.

For these reasons, I think the judgment below is correct, and should have been affirmed.